# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:26-cv-00371-CNS-KAS

YOHANNA WALLACE, individually and
on behalf of all others similarly situated,

               Plaintiff,

        v.

PILGRIM'S PRIDE CORPORATION, JBS USA
HOLDINGS, INC., THE BOARD OF DIRECTORS OF
PILGRIM'S PRIDE CORPORATION, JBS INVESTMENT
COMMITTEE, and JOHN DOES 1-20,

               Defendants.

---

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

Defendants, Pilgrim's Pride Corporation ("Pilgrim's Pride"), JBS USA Holding, Inc. ("JBS"), the Board of Directors of Pilgrim's Pride Corporation ("Board"), and JBS Investment Committee ("Committee") (collectively "Defendants"), move this Court for an order dismissing Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## I.    INTRODUCTION

Plaintiff, a participant in the Pilgrim's Pride Retirement Savings Plan ("Plan"), wrongly alleges that: (1) the Committee breached the duty of prudence by allowing Plan participants to invest in the Great-West Life & Annuity Guaranteed Investment Contract ("GIC"), a type of stable value fund ("SVF"); (2) Pilgrim's Pride, JBS, and the Board failed to monitor the Committee's selection of the GIC; and (3) Defendants engaged in prohibited transactions. Plaintiff criticizes the intentionally stable and conservative SVF investments in the Plan. Plaintiff's Complaint fails to state a claim and should be dismissed. The Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*. affords fiduciaries discretion in administering plans. *Hughes v. Nw. Univ*., 595 U.S. 170, 176 (2022). Fiduciaries who employ a prudent process in selecting plan investments are not liable under ERISA, even if other options outperform selected investments. There is potential liability only where "no reasonable fiduciary would have maintained the investment." *Jones v. DISH Network Corp.*, 2023 WL 2644081, at *6 (D. Colo. Mar. 27, 2023).

The Complaint lacks factual allegations regarding the Committee's investment selection process. Instead, Plaintiff asks the Court to *infer* a flawed fiduciary process. Plaintiff's claims fail for two main reasons. First, the Complaint does not plausibly allege that the GIC underperformed other *meaningful* comparators, as the Tenth Circuit held it

1

must in *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023). The Complaint fails *Matney's* requirements by not alleging that the comparators allow an "apples to apples" comparison through similar aims, risks, rewards, holdings, liquidity, or other contractual terms as the GIC. Second, Plaintiff cannot plausibly plead a claim for fiduciary breach based on underperformance alone. This is even truer here because: (1) Plaintiff's alleged comparator "crediting rates" are *not crediting rates at all* but are instead error-ridden calculations generated by her counsel; (2) the purported "crediting rates" average around 2% to 3%[1] higher than the GIC, a legally insufficient discrepancy; (3) her allegations span 5 years, a legally insufficient duration; and (4) she uses an inconsistent panel of comparator SVFs over this period. The prohibited transaction claim also fails for lack of Article III standing and because there was no prohibited transaction. The Court should dismiss Plaintiff's Complaint in its entirety, with prejudice.

## II.    PLAINTIFF'S ALLEGATIONS[2]

A. <u>The Plan's investments and the GIC stable value fund.</u>

The Plan is a defined contribution 401(k) retirement plan, governed by ERISA. [Doc. 1, ¶¶ 2, 55.] In a defined contribution ("DC") plan, each participant has an individual account comprised of "the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34). As of 2024,

---

[1] Calculated by averaging Plaintiff's calculations in ¶¶ 104 and 108 of the Complaint.

[2] The facts are taken from the Complaint, the SPD, the 2020-2024 Form 5500 Annual Reports incorporated into the Complaint by reference, and public records which the Court may take judicial notice. [*See e.g.*, Doc. 1, ¶¶ 2, 10-12, 27, 41, 45, 51-54, 57-60, 94, 102-104, 108, 116.] The Court may consider the documents under Rule 12(b)(6). *See Dayton v. City & Cnty. of Denver, Colorado*, 649 F. Supp. 3d 1124, 1133 (D. Colo. 2023).

the Plan had over $478 million in assets and more than 21,000 participants. [*Id.* at ¶¶ 11-12.] Pilgrim's Pride is the Plan sponsor. [*Id.* at ¶ 26.] The Committee is appointed by the Board of Pilgrim's Pride and JBS. [*Id.* at ¶¶ 28, 33.] The Committee makes investment-related decisions. [*Id.* at ¶¶ 40-41.] The Plan offers 28 investment funds, including domestic and international equity funds, company stock, and a SVF. [2024 Plan Form 5500, Schedule H, line 4(i) Schedule of Assets (Held at End of Year) (incorporated in Complaint at ¶ 2).] Plaintiff admits that SVFs are a "conservative, fixed income investment vehicle that provides a relatively stable rate of return." [*Id.*, ¶ 85.[3]] Her allegations show that the GIC maintained a positive crediting rate throughout the class period and that Plan assets grew from $399,126,544 in 2020 to $478,220,951 in 2024. [*Id.*, ¶¶ 103-108.]

B.  <u>SVFs are common investment options, but they vary in structure and goals.</u>

SVFs are a common component in DC plans and one of the *most conservative* investment options, *designed* to generate steady, lower long-term returns, with minimal volatility. At the end of 2025, 3 of 4 DC plans offered SVFs, with total investments exceeding $854 billion.[4] There are different types of SVFs with materially different structures and characteristics. [Doc. 1, ¶¶ 85, n.10; 87.] Specifically, SVF products differ regarding ownership of the underlying assets (i.e., whether the plan or insurer owns the holdings), transparency of holdings (the right to know what the fund is invested in), exit provisions to remove the fund (including the speed and cost of exit), fees (how much the

---

[3] SVFs protect against interest rate volatility to provide safety, liquidity, and attractive returns. *See* Guide to Stable Value Market Segments (https://www.stablevalue.org/guide-to-stable-value-market-segments/) (visited May 24, 2026). The DOL regulations encourage 401(k) plans to include at least one "income producing, low risk, liquid" fund. 29 C.F.R. § 2550.404c-1(b)(2)(ii)(C), (b)(3).

[4] SVIA, *Stable Value at a Glance* (visited May 24, 2026), https://tinyurl.com/2693p6xc.

investment holder/insurers are paid, and how those fees are paid), credit ratings, protections in the event of insurer default, and even how crediting rates are determined.[5] Here, the GIC is a traditional/general account SVF. [*Id.* at ¶¶ 87, 90.] General account SVFs comprise 47% of the $854 billion in total value of SVF products.[6] Returns on SVFs are measured by a crediting rate - the interest rate earned on the SVF's contract's book value - which may be fixed or changed at predetermined intervals depending on the terms of the investment contract.[7]

C. Plaintiff wrongly claims the GIC underperformed.

Plaintiff claims that Defendants breached their fiduciary duties by allowing participants to invest in the GIC, alleging that it "is a general account product" with "single-entity credit risk, plan-level illiquidity, lack of Plan participant ownership and investment control over assets, and lack of transparency as to fees" with crediting rates that "were/are well below what Defendants could have obtained . . . on the open market." [Doc. 1, ¶¶ 90-91.] Plaintiff further claims that "identical or substantially identical stable value funds with higher crediting rates, and hence lower spreads, were available to the Plan. . ." [*Id.* at ¶ 101.] Other than these conclusory allegations, Plaintiff pleads *no* facts about the supposedly "identical" characteristics of the purported comparators. For instance, she omits the: manner in which assets are held, exit provisions, protections offered in the event of insurer default, guaranteed return floors, methodology for determining crediting

---

[5] SVIA, Guaranteed Insurance Contracts FAQ (updated January 10, 2022), https://www.stablevalue.org/guaranteed-insurance-account-faq/; *see also* Stable Value Exit Provisions (updated August 25, 2023), https://www.stablevalue.org/stable-value-exit-provisions/

[6] SVIA, *Stable Value at a Glance* (visited May 24, 2026), https://tinyurl.com/2693p6xc.

[7] SVIA Glossary – "Crediting Rate" (*available at* https://www.stablevalue.org/crediting-rate/) (visited May 24, 2026).

rates, costs of the comparators, or other factors differentiating SVFs from other investments. [*See generally*, Complaint.]

Plaintiff merely identifies purported comparator plans and their supposed SVF crediting rates from 2020-2024, asserting that the GIC maintained a lower crediting rate for that five-year period. [*Id.* at 102-108.] Plaintiff switches between funds, cherry-picking only those with supposedly higher crediting rates, with the benefit of hindsight. [*Id.*; *see also* **Exhibit A**, Chart of Alleged "Comparator" Plans.] Plaintiff admits that the "crediting rates" are *her counsel's own estimates*, not the actual crediting rates for the "comparators." [Doc. 1, at ¶ 103 n.13.] Plaintiff similarly fails to plead the elements of a prohibited transaction claim, vaguely alleging that Defendants paid "excessive compensation" to and entered into undescribed "annuity transactions" with Great West. [*Id.,* at ¶¶ 16, 138.] Plaintiff does not identify the compensation alleged to be "excessive," the amount of the compensation, or the "annuity transactions" at issue.

### III.    PLEADING STANDARDS

Rule 12(b)(6) motions are an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). "The familiar Rule 12(b)(6) pleading standard applies to breach of fiduciary duty claims under ERISA." *Matney*, 80 F.4th at 1144 (citations omitted). Plaintiff "must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quotations omitted). To plead a claim for breach of the duties of prudence and monitoring, Plaintiff must plausibly show Defendants failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B). To assess plausibility, the

5

Court performs a "context specific" analysis of the complaint's allegations because, "the duty of prudence turns on 'the circumstances … prevailing' at the time the fiduciary acts." *Hughes*, 595 U.S. at 177 (quoting *Dudenhoeffer*, 573 U.S. at 425). Plaintiff must "plausibly allege fiduciary decisions outside a range of reasonableness." *Hughes,* 63 F.4th at 630. The prohibited transaction claim requires Plaintiff to "plausibly allege that a plan fiduciary engaged in a transaction proscribed [in § 1106 of ERISA]." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 709 (2025). Threadbare recitals of the elements of a cause of action, supported by conclusory statements, do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]his basic deficiency should…be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007).

A defendant may challenge subject matter jurisdiction under Rule 12(b)(1). *U.S. v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001). Plaintiff's conclusory allegations are insufficient for jurisdiction. *Saunders v. United States*, 2016 WL 870011, at *2 (D. Colo. Feb. 16, 2016), *R&R adopted*, 2016 WL 865847 (D. Colo. Mar. 7, 2016).

## IV.    ARGUMENT

### A.    Plaintiff fails to state a claim that Defendants breached their duty of prudence.

The prudence test "is one of conduct . . . not . . . performance of the investment." *Macias v. Sisters of Charity of Leavenworth Health System,* 2025 WL 4095840, at *4 (D. Colo. Jan. 6, 2025) (quoting *Kurtz v. Vail Corp.,* 511 F. Supp. 3d 1185, 1197 (D. Colo. 2021)). Plaintiff admits that she lacks "actual knowledge of the specifics of Defendants' decision-making process. . . including … for selecting, monitoring, and removing the Plan's investments and fees…" [Doc. 1, ¶ 79.] In the absence of factual allegations about

6

a fiduciary's process, a breach of prudence claim may survive only "if the court can reasonably infer from circumstantial factual allegations that the process was flawed." *Macias,* at \*4 (quoting *Kurtz*). The Tenth Circuit adopted the "meaningful benchmark" standard. *Matney*, 80 F.4th at 1148 (adopting reasoning in *Meiners v. Wells Fargo & Co.*, 898 F.3d 820 (8th Cir. 2018)). The meaningful benchmark standard is a "pleading burden," requiring an "apples to apples comparison" of the challenged fund with comparators. *Id*. at 1148-1149. Plaintiff must allege facts showing that the alternative investment options have similar aims, risks, and potential rewards. *Id*. at 1153; *see also Barchock v. CVS Health Corp.*, 886 F.3d 43, 49-50 (1st Cir. 2018) (affirming dismissal); *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020) (rejecting comparison of challenged fund). This makes sense because "[c]omparing apples and oranges is not a way to show that one is better or worse than the other." *Davis, supra*.

   1.  *Plaintiff fails to plead meaningful comparators or benchmarks.*

Plaintiff fails the "apples to apples" pleading requirement by failing to allege facts about the holdings, risks, investment strategy of the GIC, or any of the comparator SVFs, such that one could be a meaningful benchmark for another. The Complaint also fails to allege the terms of the investment contract, including liquidity, withdrawal, termination provisions, or investment guidelines. Plaintiff attempts to support her claim with improper hindsight-based crediting rates for a rotating cast of alleged comparators. [Doc. 1, ¶¶ 102-108.] Only VALIC and Auto Owners SVF appear across all five years. [*Id*.] Courts have rejected similar allegations, correctly looking far beyond the crediting rates to consider "what the investment vehicles are, what their investment purposes are, or how they are managed." *Coppel v. SeaWorld Parks & Ent., Inc.*, 2024 WL 3086702, at \*16 (S.D. Cal.

Jan. 31, 2024) (crediting rate charts failed to support assertion they were "identical or substantially identical products"); *Tedford v. Equitable Financial Life Ins. Co*., 2026 WL 1398640, at *4 (D.N.J. May 19, 2026) (rejecting comparators lacking details).

Identifying "a rotating cast of other funds with higher crediting rates…cannot support a claim of imprudence." *Clinton v. Baxter Int'l Inc.*, 2025 WL 3470685, at *7 (N.D. Ill. Dec. 3, 2025) (dismissing claim based on insufficient data); *Jacobs v. Hackensack Meridian Health, Inc.*, 2026 WL 710229, at *13 (D.N.J. Mar. 13, 2026) (comparators not meaningful without allegations of similarities); *Fitzpatrick v. Nebraska Methodist Health Sys., Inc.*, 2024 WL 6977298, at *8 (D. Neb. Sept. 20, 2024) (allegations regarding crediting rates "do not do enough to explain why the seemingly cherry-picked funds are . . . comparable. . .");  *Eibensteiner v. Essilorluxottica USA, Inc.*, 2026 WL 1140895 (N.D. Tex. Apr. 27, 2026) (comparators based only on crediting rates were insufficient).

Plaintiff offers scant allegations about the VALIC fund in the Shands Jacksonville Retirement Plan and the Auto Owners fund in the Auto Owners Retirement Plan, which she wrongly claims are "identical" to the GIC. [Doc. 1, ¶¶ 101-103; 106.] But she fails to allege facts showing what the alleged identical "terms," "risk considerations," and "economic circumstances" were. [*See generally*, Complaint.] These are precisely the types of conclusory statements that fail the meaningful benchmark standard. *See* collected cases, *supra* and *infra*.

Plaintiff's flagship comparators demonstrate the flaws in the Complaint. The VALIC fixed account in the Shands Plan is a separate "fixed account" with *de minimis* assets (generally less than 0.01% of plan assets) and a declining number of participants,

8

consistent with a now-closed legacy option.[8] [*See* **Exhibit B:** Comparison of Shands Plan

Investment Contracts (containing links to publicly available Form 5500 datasets).] During

the same period, the Shands Plan offered the Lincoln Stable Value Account, which held

roughly 23% of plan assets and was used by roughly 70% of plan participants, making it

the more apt comparator to the GIC. [*See id.*] Plaintiff's decision to anchor her theory to

the VALIC account, rather than to the plan's actively offered SVF, underscores her failure

to supply a meaningful benchmark. Similar defects appear in Plaintiff's reliance on the

Auto Owners product. The Auto Owners SVF was developed for its parent company,

offered through a wholly owned subsidiary of the plan sponsor, and thus had the Auto

Owners plan as its primary client. [2023 Form 5500 Auto Owners Insurance Company

Retirement Savings Plan, Auditor report, Note 3[9]. s*ee* **Exhibit C**, Plans with Auto Owners

Life Insurance Company Contracts, 2020-2024]. Form 5500 data reflects contracts with

only two unrelated defined contribution plans – one with no reported assets, and the other

seemingly discontinued after 2020. [*Id*.] On the face of the Form 5500 filings, Plaintiff's

Auto Owners and Shands examples are not open-market alternatives available to

unrelated plans and not the "meaningful benchmarks" for which Plaintiff holds them out.

As for the rest of their purported comparators, Plaintiff's conclusory assertion that

they had "similar characteristics" as the GIC does not include plausible allegations of

those similarities. [Doc. 1, ¶ 108.] Such conclusory assertions are not sufficient to state a

claim. *See Anderson v. Intel Corp.*, 2021 WL 229235, at *8 (N.D. Cal. Jan. 21, 2021),

---

[8] A second VALIC contract-based investment, not referenced in the complaint, reflects
the same pattern of steadily decreasing participant counts, consistent with both VALIC
investments being frozen to new participants. [*See* Exhibit B.]
[9] Referenced in the Complaint in Paragraph 102 and by reference.

*aff'd.* 137 F.4th 1015 (9th Cir. 2025) ("simply labeling funds as 'comparable' or 'a peer' is insufficient); *Locascio v. Fluor Corp.*, 2023 WL 320000, at *6 (N.D. Tex. Jan. 18, 2023) (same); *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022) (no meaningful benchmark where comparators were missing details); *Eibensteiner* 2026 WL 1140895 at *4 (same); *Jacobs,* 2026 WL 710229, at *11 (holding that benchmarks "must be specific and sufficiently similar".) (internal quotes omitted); *Glick v. ThedaCare, Inc.*, 2022 WL 16927749, at *6 (E.D. Wis. Oct. 27, 2022), *R&R adopted*, 2022 WL 16924188 (E.D. Wis. Nov. 14, 2022).

Examination of the rotating comparators reveals flaws similar to those in the Shands and Auto Owners plans. For the Baylor College of Medicine Retirement Plan (a 2020-2022 comparator), Plaintiff references a SVF from Lincoln Financial Group. [Doc. 1, ¶ 108.] The Baylor Plan features just one fund offered by Lincoln, which is a "fixed annuity contract" and not a SVF. [2020 Form 5500 Baylor College of Medicine Retirement Plan, Schedule H Attachment-Schedule of Assets.[10]] With respect to the American United Life Insurance Company ("AUL") (also a 2020-2022 comparator), it sponsored the plan and offered the SVF contract. [2020 Form 5500 AUL Progress Sharing Plan and Trust, Schedule A.[11]] AUL sat on both sides of the contract transaction, rendering this fund not an "apples to apples" comparator to the GIC. Plaintiff also fails to allege that the Committee could have analyzed the crediting rates in real time. Plaintiff alleges that she determined the crediting rates from the Form 5500s. [Doc. 1, ¶ 103, n.13.]  A Form 5500

---

[10] Link: https://efast2-filings-public.s3.amazonaws.com/prd/2021/10/15/20211015105411NAL0016944243001.pdf
[11] Link: https://efast2-filings-public.s3.amazonaws.com/prd/2021/10/13/20211013064649NAL0018864945001.pdf

for a calendar year is not initially due for filing until the end of July of the next year. *See* 29 C.F.R. § 2520.104a-5(a)(2025). Because prudence is assessed based on circumstances "at the time the fiduciary act[ed]," *Hughes*, 595 U.S. at 177, this Court may dismiss prudence cases based on hindsight allegations. *See e.g., Kurtz*, 511 F. Supp. 3d at 1199; *Birse v. CenturyLink, Inc.*, 2019 WL 1292861, at *5 (D. Colo. Mar. 20, 2019).

### 2. Plaintiff fails to allege substantial and sustained underperformance.

Plaintiff alleges that her comparators earned about 2% to 3% more than the GIC over 5 years. [Doc. 1, ¶¶ 103; 108.] In addition to flaws with the comparators, the minimal alleged underperformance over such a short period is insufficient to state a claim for imprudence. *See e.g., Enstrom v. SAS Inst.*, 2025 WL 685219, at *5 (E.D.N.C. Mar. 3, 2025) (1%-4% difference failed to show underperformance); *Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 340-41 (S.D.N.Y. 2024) (underperformance of up to 4.57% insufficient); *Abel v. CMFG Life Ins. Co.*, 2024 WL 307489, at *5 (W.D. Wis. Jan. 26, 2024) (underperformance for 3-5 year periods of "0.2% to around 5%" did not plausibly allege imprudence); *Luckett v. Wintrust Fin. Corp.*, 2024 WL 3823175, at *5 (N.D. Ill. Aug. 14, 2024) (3-5 year horizons are relative blips in the timelines of plans); *Ruilova v. Yale-New Haven Hosp., Inc.*, 2023 WL 2301962, at *15 (D. Conn. Mar. 1, 2023) (allegations based on 5-year returns insufficient); *Cho v. Prudential Ins. Co. of Am.*, 2021 WL 4438186, *10 (D.N.J. Sept. 27, 2021) (5-year underperformance of .07%-3.71% insufficient); *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405, at *4 (N.D. Cal. Oct. 5, 2020) (5 year returns insufficient); *Dorman v. Charles Schwab Corp.*, No. 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (5 years "relatively short" period); *Bekker v. Neuberger Berman Group LLC*, 2018 WL 4636841, at *2, *7 (S.D.N.Y. Sept. 27,

11

2018) (10-year underperformance of 4.4% insufficient); *cf. Jacobs v. Verizon Commc'ns, Inc.*, 2017 WL 8809714, at *2, *9 (S.D.N.Y. Sept. 28, 2017) (10-year underperformance of 8.63% adequate).

Compounding the issues with Plaintiff's comparisons, her sample size (4-7 rotating plans per year) is simply too small and inconsistent to support imprudence. *See Clinton*, 2025 WL 3470685, at *3. Plaintiff must show "there were year-in, year-out better-performing alternatives that cast doubt on the [] Committee's process for monitoring and renewing its own funds." *Id.* at *7. A "rotating cast of other funds with higher crediting rates…cannot support a claim of imprudence, or else—by a plaintiff's cherry-picking—all but a handful of funds each year would be subject to such attacks." *Id*. Plaintiff's counsel has filed dozens of SVF cases based on insufficient "crediting rate" allegations. A sampling of more recent cases shows performance similar to that of the GIC over 5-year periods. [*See* **Exhibit D**, Challenged Fund Chart.] These real-world, non-cherry-picked comparators provide a larger, more robust, and consistent sample of SVFs (used in ERISA plans by some of the most sophisticated employers and backed by respected insurance companies) against which to assess the GIC's performance.

### 3. *The error-ridden rates are not entitled to reasonable inferences.*

The crediting rates in the Complaint's charts fail due to math errors. Plaintiff admits that, "[f]or crediting rates not identified in the plans' Form 5500s, the calculated yield is interest credited divided by the end of year balance." [Doc. 1, ¶ 103, n.13.] Plaintiff's formula is flawed by a "garbage in, garbage out" process. Courts typically draw reasonable inferences in the plaintiff's favor at the motion to dismiss stage, but "because of its serious defects, the chart here permits no reasonable inferences, so it does nothing

12

to plausibly allege an ERISA violation." *Woznicki v. Aurora Health Care Inc*., 2022 WL 1720093, at *3 (E.D. Wis. May 27, 2022). First, Plaintiff's formula improperly divides interest, mistakenly calculated using a figure that includes year-end accrued interest, by the year-end balance. A simple example shows the error. If a $100 balance has accrued simple interest at a 5% crediting rate, the year-end balance would be $105. But under Plaintiff's formula, the $5 in interest credit would be divided into $105, not $100, resulting in an incorrect crediting rate of 4.76% instead of 5%. Plaintiff's counsel used the same formula that was rejected in *Clinton*. *See Clinton*, 2025 WL 3470685, at *8. Second, Plaintiff's formula focuses on the year-end balance but does not consider money entering or exiting the funds during the year. For instance, if a participant invested funds near the end of the year, Plaintiff's formula would underestimate the crediting rate. Using the prior example, if another $100 was deposited at year-end, Plaintiff would divide the $5 interest by $205, incorrectly estimating the crediting rate at 2.44% instead of 5%.

The flaws in Plaintiff's formula are particularly acute for the GIC because the Plan disclosures for those products do not present a single, annually fixed "crediting rate" that can be reconstructed from year-end balances and interest credits. Pilgrim's Pride's 2024 Form 5500 auditor notes explain that the "crediting rate is reviewed on a quarterly basis for resetting," and the Plan reports an "average yield earned" for the year. Crediting rates were reported in the 2022, 2023, and 2024 Forms 5500. [2022-2024 Forms 5500 Pilgrim's Pride Retirement Savings Plan, Notes to Financial Statements.] Plaintiff switched between these disclosed rates and her inaccurately calculated rate. Plaintiff correctly used the audited crediting rates for 2022-2023, but switched to the calculated rate in 2024, despite an audited crediting rate report on the 2024 Form 5500. [Doc. 1, ¶¶ 103-108.]

13

4. <u>Plaintiff's derivative duty to monitor claim fails.</u>

In Count II, Plaintiff brings a § 1132(a)(2) claim against Pilgrim's Pride, JBS, and the Board for an alleged violation of the "duty to monitor" the Committee. [Doc. 1, ¶¶ 128-133.] A failure-to-monitor claim is derivative of an underlying breach of fiduciary duty claim. *See, e.g.*, *Matney*, 80 F.4th at 1159, n.21; *see also Carimbocas v. TTEC Servs. Corp.*, 2024 WL 4290808, at *2 (D. Colo. Sept. 25, 2024). Because Plaintiff fails to state a claim for imprudence, her duty to monitor claim also fails. *See, id.* In addition, Plaintiff failed to plead facts supporting that any monitoring fiduciary breached its duty. Merely alleging the elements of the claim is not enough. *See Iqbal*, 556 U.S. at 678.

5. <u>Plaintiff's prohibited transaction claim also fails.</u>

In Count III, Plaintiff wrongly alleges that Defendants engaged in a prohibited transaction with a party in interest under ERISA, 29 U.S.C. § 1106(a)(1)(C), seeking relief for the Plan under § 1132(a)(2). Plaintiff claims that Defendants caused the Plan to engage in undefined "annuity transactions" when it paid "fees" and "excessive compensation" to Great West for "managing" the GIC. [Doc. 1, ¶¶ 16, 56, 138, and 141.] Plaintiff does not plausibly allege Plan injury due to the transactions. Plaintiff's claim fails because: (1) she lacks Article III standing absent a concrete injury; and (2) she did not plausibly plead facts alleging the "annuity transactions" or "fees" at issue, let alone their "excessive" nature. To establish Article III standing, Plaintiff must allege (i) she suffered an injury in fact that is concrete, particularized, and actual or imminent, (ii) the injury was caused by the defendant, and (iii) the injury would likely be redressed by the requested judicial relief. *Thole v. U. S. Bank N.A.*, 590 U.S. 538, 547 (2020); *see also, TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). The Supreme Court recently urged district

14

courts to "dismiss suits that allege a prohibited transaction occurred but fail to identify an injury." *Cunningham*, 604 U.S. at 708. Such is precisely the case here. Plaintiff fails to allege that she or the Plan was damaged *because of* the alleged transactions. [*See generally*, Doc. 1.] Thus, Plaintiff fails to plausibly plead an injury from the transactions. Plaintiff lacks standing, and Count III should be dismissed.

Plaintiff's prohibited transaction claim also fails due to her vague and conclusory allegations. In *Cunningham*, the Supreme Court clarified that plaintiffs need only plead the occurrence of a transaction covered by a prohibition in 29 U.S.C. § 1106(a). *Id*. at 700. Even under this standard, which the Supreme Court acknowledged was prone to "barebones" pleadings, *id.* at 708, Plaintiff still fails to state a claim. Indeed, Plaintiff does not identify the "annuity transactions" forming the basis of her claim or the nature of the "excessive compensation" and "fees" she contends were incurred. At best, the Complaint pleads the existence of routine payments for Plan services, which do not rise to a § 1106(a) violation. *See Albert v. Oshkosh Corp.*, 47 F.4th 570, 585 (7th Cir. 2022). Similarly, Plaintiff fails to allege that the Defendants and Great West had any relationship prior to the Plan offering the GIC. As the Tenth Circuit explained, "ERISA cannot be used to put an end to run-of-the-mill service agreements, opening plan fiduciaries up to litigation merely because they engaged in an arm's length deal with a service provider. Instead, ERISA is meant to prevent fiduciaries from engaging in transactions with parties with whom they have pre-existing relationships, raising concerns of impropriety." *Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021).

Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

Dated 26th day of May 2026.

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


*s/ Eric P. Mathisen*
Eric P. Mathisen
15 West South Temple St., Suite 950
Salt Lake City, UT  84101
Telephone:  801-658-6048
Facsimile: 385-360-1707
eric.mathisen@ogletree.com

-and-

Mark E. Schmidtke
56 S. Washington St., Suite 302
Valparaiso, IN 46383
Telephone:  219-242-8668
Facsimile:  219-242-8649
mark.schmidtke@ogletree.com

*Attorneys for Defendants, Pilgrim's Pride Corporation, JBS USA Holdings Inc., The Board of Directors of Pilgrim's Pride Corporation and JBS Investment Committee*


## CERTIFICATE OF CONFERRAL

Pursuant to CNS Civ. Practice Standard § 7.1B(b), undersigned counsel certifies that he conferred with Plaintiff's counsel regarding this motion. The defects in the Complaint cannot be cured with an amended pleading.

## AI CERTIFICATION

The undersigned counsel certifies that generative artificial intelligence was not used to draft this filing.

*/s/ Eric P. Mathisen*
Eric P. Mathisen

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of May 2026, I electronically filed the foregoing

Caption with the Clerk of Court using the CM/ECF system which will send notification of

such filing to the following e-mail addresses:

Mark K. Gyandoh, Esquire
James A. Maro, Esquire
CAPOZZI ADLER, P.C.
markg@capozziadler.com
jamesm@capozziadler.com

*Attorneys for Plaintiff and the Putative Class*

*s/ Eric P. Mathisen*
Eric P. Mathisen
