**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| YOHANNA WALLACE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>PILGRIM'S PRIDE CORPORATION, JBS USA HOLDINGS, INC., THE BOARD OF DIRECTORS OF PILGRIM'S PRIDE CORPORATION, JBS INVESTMENT COMMITTEE, and JOHN DOES 1-20,<br><br>Defendants. | ) | **CIVIL ACTION NO.:26-cv-00371-CNS-KAS** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Yohanna Wallace ("Plaintiff"), on behalf of the Pilgrim's Pride Retirement Savings Plan (the "Plan"), hereby respectfully submits this Opposition to Defendants[1] Motion to Dismiss Plaintiff's Amended Complaint, Dkt. 40 (hereinafter "MTD").

[1] "Defendants" refers collectively to Pilgrim's Pride Corporation, JBS USA Holdings, Inc., the Board of Directors of Pilgrim's Pride Corporation, and the JBS Investment Committee. "ERISA" refers to the Employee Retirement Income Security Act of 1974.

## I. INTRODUCTION

The Supreme Court has instructed that ERISA does not grant fiduciaries a "defense friendly standard," or "presumption of prudence." *Bancorp v. Dudenhoeffer*, 573 U.S. 409, 412 (2014). Plaintiffs "may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015). The crux of this case is Defendants' "lack of an investment review process," Dkt. 33, Amended Class Action Complaint ("AC" or "¶"), at ¶ 75, by detailing the prevailing standard of care under the instant circumstances and information knowable to Defendants *before and throughout their stewardship* (*i.e.*, foresight allegations), to show that the Plan's only stable value investment, the Great-West Life & Annuity Insurance Company general account Guaranteed Investment Contract ("*GW-GIC*") should have obtained better rates – *specifically, rates commensurate with the GW-GIC's risk profile as a general account GIC*, its less desirable features compared to other SVF types, the Plan's bargaining power, and the purpose of an SVF in a defined contribution plan. ¶¶ 10-12, 14-15, 54, 58, 73, 109 150-51, 159-60.

All of Defendants' arguments, including assertions of improper and incomplete charts, fatally ignore key factual allegations in the AC, particularly allegations regarding general account GICs, procedural inferences derived from pre-class, and pre-review time period, and specific facts supporting comparability and crediting rate methodology.

Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied.

## II. FACTS

Because Defendants denied Plaintiffs pre-suit access to their decision-making documents, and because contracts remain in plan fiduciary's private possession, ¶¶ 92-

95, Plaintiffs rely, as ERISA permits, on industry data and publicly filed DOL Form 5500s. *See Brewer v. Alliance Coal, LLC*, 2026 WL 2445492, at **6, 9 (N.D. Okla. Aug. 20, 2026).

Distinct from mutual funds, SVFs are conservative, fixed-income products offering a set, guaranteed return, and their risk is “a creature of their structural design rather than their investment strategy.” AC ¶¶ 65-67. The GW-GIC is “a general account, fixed annuity contract” meaning that it had the following undesirable characteristics: “single-entity credit risk, plan-level illiquidity, lack of Plan participant ownership and investment control over assets, and lack of transparency as to fees.” ¶¶ 73, 109, 159. Of the three GIC types, general account, separate account, and synthetic, general account GICs are riskiest because their guarantees are backed solely by the insurer’s general account, with no protection in the event of insurer-bankruptcy. ¶¶ 68-69, 73, 109, 159. That risk is meant to be compensated by higher rates. ¶¶ 68, 73, 109, 159.

The prevailing standard of care for fiduciaries of defined contribution plans with SVFs required Defendants to research and test the market on an ongoing basis, by negotiating, soliciting competitive bids, leveraging plan size, comparing relative performance, and following the Plan’s investment policy statement (“IPS”). ¶¶ 80-83, 91, 99-100. The GW-GIC’s terms allowed all of this: rates were “announced in advance” and “guaranteed for a three-month period,” and it was benefit responsive, letting participants withdraw at book value to move to a prudent alternative had Defendants made one available. ¶¶ 70-71, 103. The need to diligently monitor the GW-GIC was heightened here because it was the only SVF in the Plan, and represented roughly 16-20% of Plan assets. AC ¶¶ 58, 82-84, 103. The Plan’s size conferred significant bargaining power raising the expectation of higher rates, ¶¶ 10-12, 56-58, 151, 160, and the IPS required

benchmarking each Plan investment against a "peer group … at least annually." ¶¶ 89-90. Because rates are set in advance, reset quarterly, and negotiable, Defendants should have identified the subpar rates quarterly. ¶¶ 70, 102-03.

Based on fundamental risk-reward principles, the GW-GIC should have offered rates equal to or higher than the alleged Comparators. AC ¶¶ 72, 104-07, 111. The AC identifies five specific Comparators that repeat every alleged year from 2013-2024, supported by Form 5500 details establishing equivalent structural risk, liquidity, and exit terms. ¶ 111. The Auto-Owners, Ameritas, Standard, and Transamerica funds are general account GICs like the GW-GIC, while the Ford GIC provides "a specified minimum rate of interest" that is solely, "fully [...] guaranteed by TIAA's claims paying ability" as the issuing insurer, ¶ 111, thereby matching the risk-structure of the GW-GIC. ¶¶ 69-70. Also alleged are numerous other GICs that consistently outperformed the GW-GIC, and, based on the drivers of rates, were equivalent (or better than) the GW-GIC in terms of risk, benefits, and rate expectations. AC ¶¶ 15, 73, 135.

From 2013-2020, and 2023-2024, the affiliated funds offered the lowest, or second lowest rate, compared to the other non-affiliated Comparators. ¶¶ 117-39, 142-45, including the Auto Owners Insurance Company Retirement Savings Plan in 2024. ¶ 145. Importantly, in 2021, American United Life Insurance Company ("AUL") gave its employee plan a lower rate than AUL gave the Holzer Health System 401(a) Profit Sharing Plan, and AUL's employee plan had the second lowest rate of all of the comparators which were unaffiliated plans. ¶ 138. All unaffiliated plans had higher rates than the Plan. Apart from the legal impropriety and fact that Defendants' link for their lawyer-made charts *do not* actually show any purported data sets, *see* Dkt. 40-3, the issue with Defendants' chart of

the affiliated funds' offerings is that Defendants rely on *all* of the insurance "contracts," without narrowing the purported contract pool to exclude safer products with lower return expectations, while Defendants also concede that general account GICs account for less than half of the SVF marketplace, MTD at 4, and Defendants' charts show that the insurers offered other contracts at higher rates than their own employees. *See* Dkt. 40-3.

Because the Plan is a defined contribution plan, participant retirement benefits depend on investment returns, whereby compounding underperformance results in exponential long-term losses. ¶¶ 2, 54, 113-14; *Troudt v. Oracle Corp.*, 2017 WL 663060, at *6 n.2 (D. Colo. Feb. 16, 2017). Accordingly, "prudent fiduciaries will compare relative performance of comparable investments," rather than "absolute" returns. ¶¶ 113-14. Against the Comparators, the GW-GIC had an overall underperformance of 48.40% before the Class Period and 55.03% throughout the Class Period. ¶¶ 131, 148. "For crediting rates not identified in the plans' Form 5500s, the calculated yield is interest credited divided by the end of year balance." ¶ 117 n.14.

Furthermore, the broader Stable Value Institute of America ("SVIA") Benchmark, inclusive of over 135,000 plans, achieved a 4.1% compound annual growth rate from 2010 to 2019, which was higher than the Comparators, demonstrating a conservative peer group, not the highest performing funds, while the GW-GIC yielded only 1.91%. AC ¶¶ 153-54. By retaining the underperforming GW-GIC, Defendants caused severe financial losses to Plan participants. AC ¶¶ 158, 164.

## III. ARGUMENT

### A. Standard of Review

Courts "accept the well-pleaded facts alleged as true and view them in the light most favorable to the plaintiff," *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1144 (10th Cir. 2023), using a "context-specific inquiry" considering the "allegations as a whole." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022) (*Hughes I*). Because ERISA plaintiffs "generally lack the inside information necessary to make out their [imprudence] claims in detail unless and until discovery commences," *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009), "courts read their complaints 'slightly more leniently.'" *Macias v. Sisters of Charity of Leavenworth Health Sys.*, 2025 WL 4038011, at *7 (D. Colo. July 24, 2025) (citation omitted). "[T]he 'range of reasonable judgments' that may be made" are "alternative explanations [that] need not be conclusively ruled out at the pleadings stage." *Hughes v. Nw. Univ*., 63 F.4th 615, 628 (7th Cir. 2023) ("*Hughes II*")[2]; *see also Johnson v. Parker-Hannifin Corp*., 122 F.4th 205, 222 (6th Cir. 2024) (same).

Reliance on extrinsic evidence to contradict a complaint is a reversible error absent conversion to summary judgment, which ERISA courts find inappropriate given plaintiffs' limited discovery access. *See Brewer*, 2026 WL 2445492, at *8 (citing *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010)). Courts decline to accept defendants' Form 5500 disputes or "exhibits and … arguments concerning comparative credit ratings;" they are "not … the appropriate vehicle for arguments regarding the truth of Plaintiffs' allegations." *Disselkamp v. Norton Healthcare, Inc.*, 2019 WL 3536038, at *8 (W.D. Ky. Aug. 2, 2019); *see also Troudt*, 2017 WL 663060, at *4 (same in an investment challenge in this Circuit).

**B. There Is No 12(b)(1) Challenge Here**

[2] *See* MTD at 6 (using *Hughes II* as the standard of review)

Defendants offer no explanation or legal basis for a Rule 12(b)(1) challenge. "This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1)" because Plaintiffs' claims arise solely under § 502 and Title I of ERISA. *See Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1155–56 (10th Cir. 2004).

**C. The AC Alleges Deficient Fiduciary Processes**

Defendants wrongly mischaracterize the AC as alleging "hindsight-based crediting rates" and nothing more. MTD 11–12. "[A] diligent investment professional's ongoing review … would take into account any underperformance" and "historical" information existing before the Class Period, because their duty to monitor plan investments is "'continuing.'" *Johnson,* 122 F.4th at 215-16, 222 (quoting *Tibble, 575 U.S. at* 529). Fiduciaries "cannot ignore the power the trust wields to obtain favorable investment products." *Id*., at 222. Defendants fatally ignore the uncompensated risk allegations, and ask this Court to ignore the historical data from before the Class Period that provides "a 'foresight-over-hindsight perspective,'" into what was knowable during and throughout the Class Period. *Id.*, at 216.

Plaintiff alleges that the GW-GIC's chronic, multifaceted problems, especially its uncompensated risk and unleveraged bargaining power, was knowable before the Class Period and before each instance of Defendants' expected review intervals during the Class Period, with review periods based on the terms of the GW-GIC and IPS. ¶¶ 10-15, 54, 58, 73-74, 109, 150-51, 159-60; *see also Muldoon v. Penn State Health*, 2026 WL 2594498, at *11 (M.D. Pa. Sept. 2, 2026) (upholding similar uncompensated risk and chronic underperformance allegations on a 12(b)(6) challenge); *Macias*, 2025 WL 4038011, at *4 (the IPS supports process inferences). Defendants' hindsight arguments

are misplaced in SVF cases, where the terms are negotiable and set "in advance." *Wood v. Prudential Ret. Ins*., 2016 WL 5940946, at 1 (D. Conn. Sept. 19, 2016); *Miller v. AutoZone, Inc.*, 2020 WL 6479564, at *6 (W.D. Tenn. Sept. 18, 2020). Moreover, courts in general account cases uphold the same alleged failures to "leverage[] the size of the plan to either negotiate a better deal … or to remove the underperforming option … and replace it with a safer or higher performing one." *Payne v. Hormel Foods Corp*., 2024 WL 4228613, at *8 (D. Minn. Sept. 18, 2024); ¶¶ 99-103.[3]

As these forgoing cases demonstrate a "fixed income investment" that "never lost principal," MTD 3, does not defeat liability, because even a nominal gain produces "a measurable loss of opportunity," especially in uncompensated risk cases. *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 31 (1st Cir. 2018); *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 806–07 (7th Cir. 2013) (SVF returns must be "meaningful"); *Teets v. Great-W. Life & Annuity Ins. Co.*, 106 F. Supp. 3d 1198, 1200–03 (D. Colo. 2015) (Martínez, J.) (a guaranteed floor did not warrant dismissal).

Indeed, this case is not "based only on crediting rates," and the number, duration, and risk-profiles of the Comparators renders Defendants' caselaw inapposite. MTD at 12. Defendants' own *Clinton v. Baxter Int'l Inc*. case rejected the same "underperformance alone" misconstruction, because "retaining underperforming funds—and failing to negotiate accordingly—are process-based." 2025 WL 3470685, at *3 (N.D. Ill. Dec. 3, 2025). The court also rejected the comparator arguments as premature fact disputes. Id., at *6. That dismissal was based on there being *no* funds that repeated year-after-

---

[3] See also *Halamek v. Philips N. Am. LLC*, 2026 WL 2620864, at *3 (D. Mass. Sept. 4, 2026); *Carter v. Sentara Healthcare Fiduciary Comm*., 2025 WL 2427614 (E.D. Va. Aug.11, 2025); *Miller,* 2020 WL 6479564, at **4-5, 6.

year. *Id*., at *7; *but see Brewer*, 2026 WL 2445492, at *7 (a lack of repeating plans did not warrant dismissal). Here, Defendants concede five comparators are alleged for every year from 2013-2024. *See* MTD at 5. *Coppel v. SeaWorld Parks & Ent., Inc.*, 2024 WL 3086702, at 16–17 (S.D. Cal. Jan. 31, 2024), upheld a TIAA-CREF general account GIC comparator and denied dismissal because there were accompanying failure-to-bid allegations. Defendants cite only *Coppel's* separate holding that riskier funds cannot be comparators to safer investments. That is not the case here. Defendants' remaining GIC cases are similarly inapposite because they could not involve the uncompensated risk allegations alleged here as they challenged "the least risky" SVFs, not general account GICs. *Johnston v. Intermountain Healthcare, Inc*., 2026 WL 1998490, at *3 (D. Utah July 10, 2026) ("*Intermountain*").[4]

### D. The AC alleges Meaningful Benchmarks

"What makes a [] comparison meaningful … depend[s] on context.'" *Matney*, 80 F.4th at 1148 (citation omitted). *Matney* challenged mutual fund "management fees" and gave only examples of comparability factors, such as "*similar* investment strategies,

---

[4] *See also Hensley v. Molson Coors Beverage Company Usa LLC Governance Committee*, 2026 WL 1878633, at *4 (E.D. Wis. June 30, 2026) (challenging the safest GIC type); *Tedford v. Equitable Fin. Life Ins. Co*., 2026 WL 1398640, at *4 (D.N.J. May 19, 2026; (same); *Jacobs v. Hackensack Meridian Health, Inc*., 2026 WL 710229, at *11 (D.N.J. Mar. 13, 2026) (similar); Dkt. 26-4, line 8 (*Eibensteiner v. EssilorLuxottica USA, Inc.*, 2026 WL 1140895 (N.D. Tex. Apr. 27, 2026) only involved four years of underperformance). *Fitzpatrick v. Nebraska Methodist Health Sys., Inc*., 2024 WL 6977298, at *8 (D. Neb. Sept. 20, 2024) and *Hodges v. Washington Reg'l Med. Sys.*, 2026 WL 2296091, at *2 (W.D. Ark. Aug. 10, 2026) involved mutual funds, not crediting rates, which Defendants agree Plaintiffs have "important differences" from SVFs. ¶ 67; MTD at 3-4. Defendants' case *of Birse v. CenturyLink, Inc*, 2019 WL 1292861, at *5 (D. Colo. Mar. 20, 2019), also it involved a distinguishable growth fund and its reason for dismissal is "no longer good law after *Hughes*." *Schissler v. Janus Henderson US (Holdings) Inc.*, 2023 WL 6902050, at *18 (D. Colo. Sept. 7, 2023) (distinguishing *Birse*).

*similar* investment objectives, *or* *similar* risk profiles." *Id.* (emphasis added) (quoting *Meiners v. Wells Fargo & Company*, 898 F.3d 820, 823 (8th Cir. 2018)). Exact identity is neither required nor logical. *See Johnson v. Russell Inv. Mgmt., LLC*, 2026 WL 2387006, at *5 (11th Cir. Aug. 17, 2026) ("*Russell*"). Moreover, this Court explained that *Matney* did not change the rule that comparability allegations are viewed "in the light most favorable to Plaintiffs," with "all reasonable inferences" in their favor, and can rest on Form 5500s at this pre-discovery stage. *Carimbocas v. TTEC Servs. Corp*., 2024 WL 4290808, at *4 (D. Colo. Sept. 25, 2024) (Sweeney, J.); *see also Muldoon*, 2026 WL 2594498, at *11.

*Most critically,* the AC alleges "similar risk." *Matney*, 80 F.4th at 1148. All SVFs offer the same benefit, "a set return on investment," with risk that "is a creature of their structural design rather than their investment strategy," *Payne*, 2024 WL 4228613, at *6-7 (applying *Meiners*). Accordingly, comparing general account GICs to equal or lower risk SVFs, and the same or better characteristics, satisfies the meaningful benchmark standard. ¶¶ 73, 105, 109-11, 149-50, 159; *see also Macias*, 2025 WL 4038011, at **8, 9.

Defendants' remaining arguments ignore the general account allegations and the nature of SVFs. *First*, The AC alleges far more than "two unrelated" Comparators, MTD at 8, but actually alleges: (1) several unaffiliated plans each Class Period year, all with higher rates than the Plan; (2) from 2013-2020 and 2023-2024, affiliated funds offered the lowest or second-lowest rate versus the non-affiliated Comparators (including the Auto Owners Retirement Savings Plan); and (3) AUL gave the Holzer Plan a higher rate than its own plan. ¶¶ 135-147. Defendants cite no cases excluding affiliated funds. Conversely, a court recently upheld the "Auto-Owners[,]" "Ameritas, Standard, and Transamerica" plans specifically. MTD at 9; *see Halamek*, 2026 WL 2620864, at *2 n.1;

*see also Somers v. Cape Cod Healthcare, Inc*., 2024 WL 4008527, at *5 (D. Mass. Aug. 30, 2024) (upholding an affiliated-plan SVF comparator). The full Auto-Owners Form 5500 has materially identical "general account," withdrawal-fee, and single-entity crediting-risk language, Exhibit A, at AOLIC-000003, as the GW-GIC, ¶ 70, thereby contradicting Defendants' mischaracterized snippets and their counterfactual that the Auto-Owners plan is the insurer's "primary client." MTD at 9. Defendants' overinclusive lawyer-made chart that points to no actual underlying data, Dkt. 40-3, fails to disaggregate for lower-risk-reward contract types, while Defendants concede general account GICs are less than half of the market. *See* MTD 4. At most, and properly viewing inference sin Plaintiff's favor, the chart shows that insurers offered other plans higher rates than their own and that most SVFs are safer and have correspondingly lower returns. Hence why Courts refuse to accept a defendants' version of Form 5500s and exhibits at this stage. *See Brewer*, 2026 WL 2445492, at **6, 9; *Disselkamp,* 2019 WL 3536038, at *8.

*Second*, the Tenth Circuit requires only "similar" comparators. *Matney*, 80 F.4th at 1148. Defendants' subjective, unsupported list of "most crucial characteristics," MTD 5, supplies no prudent explanation for the chronic disparities. *See Hughes II*, 63 F.4th at 628; *Johnson*, 122 F.4th at 222. The Form 5500s and general account allegations (¶¶ 73-74, 111) address "the way assets, are held, exit provisions," "protections offered in the event of insurer default," and the "costs," MTD at 5, showing the GICs have the same or *better* features and protections than the GW-GIC, making the rate disparities especially unjustified. *See* ¶¶ 70, 111. Benefit responsiveness (withdrawal) and termination provisions (¶¶ 70-73, 104, 111) are the "terms" Defendants accuse the AC of lacking while baselessly calling them "generic." MTD at 10.

Underlying investments and strategy are not always required under ERISA's context-specific analysis, *Johnson*, 122 F.4th at 218, especially here because "returns on general account products are not directly linked with the underlying assets," *Disselkamp*, 2019 WL 3536038, at *7,* and they "are defined by their predictability … rather than their investment strategy." *Payne*, 2024 WL 4228613, at *6, 8; *see also Miller*, 2020 WL 6479564, **5-6. An insurer's investment ineptitude or "that the crediting rate was set by formula" does not relieve fiduciaries of the duty to conduct a regular "review or transition [] to use of another SVF," *Halamek*, 2026 WL 2620864, at *3 n.2, rather than let participants "lose substantial value by continuing to invest in the Great West GIC." *Muldoon*, 2026 WL 2594498, at *9; *Wood*, 2016 WL 5940946, at *4 (citing *Lau v. Metropolitan Life Insurance Co*., 2016 WL 5957687, at *3-5 (S.D.N.Y. Aug. 22, 2016)) (the "methodology used to set the interest rate" is a premature fact issue).

Third, "identical … economic circumstances" is expressly and inherently alleged, because all of the Comparators, and the SVIA Benchmark outperformed the GW-GIC in the same economies. The equivalence of the Comparator's insurer creditworthiness is not just accepted as true at this stage, *Matney,* 80 F.4th at 1144, but Defendants agree that many of the same Comparator insurers, *e.g.*, Transamerica, TIAA, Lincoln, MassMutual, and Principal, are "backed by respected insurance companies." MTD at 14 (referring to Dkt. 26-4), rendering Defendants' arguments even more moot.

Fourth, the SVIA benchmark includes 135,000 plans necessarily including those with lower risk-reward profiles, ¶ 153, and does not have "the issuer or an affiliate standing on both sides of the relationship." MTD at 9. Defendants attempt to argue that the SVIA

Benchmark is skewed because it considers "asset growth" MTD at 9, while inconsistently noting that the Plan's assets also experienced asset growth at the same time. MTD at 3.

*Fifth*, what "was 'actually available' … is a variant of the alternative explanation defense" and a premature fact dispute. *Hughes II*, 63 F.4th at 630; *Johnson*, 122 F.4th at 220; *Payne*, 2024 WL 4228613, at *4 n.2; *Lacrosse v. Jack Henry & Assocs.*, 2024 WL 3564575, at *3 (W.D. Mo. July 11, 2024) (the rates, not necessarily the product, must be plausibly available). *Anderson* held that "[t]he ultimate question, absent direct allegations about the fiduciary's investment methods, is not … what *other* investments were available, but … the plausible inference" alleged. *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1029-30 (9th Cir. 2025), *cert. granted*, 223 L. Ed. 2d 553 (Jan. 16, 2026) (emphasis in *Anderson*). Its discussion of "individual investments that were actually available" was merely an alternative to "a plan-level comparison." *Id.*, at 1029-30.

Sixth, Defendants' criticism of the Baylor and the Ford Plans' SVFs as being "fixed annuity contract[s]," MTD at 10, 11, fails by definition, because the GWL&A is also a "fixed annuity contract." ¶ 73, *see also* ¶¶ 65, 72, 104, 152. Defendants do not attempt to explain the difference in the Baylor Plan, and baldly state that the SVF in the Ford plan is not benefit responsive. As discussed *supra*, the GW-GIC and Ford Plan are structurally the same with materially similar Form 5500 language, ¶¶ 70, 111, which is why the "TIAA product" is a meaningful comparator to general account GICs, and its terms "ha[ve] no bearing on the fund's ability to offer higher crediting rates." *Lacrosse*, 2024 WL 3564575, at *3; see also *Payne*, 2024 WL 4228613, at *4 n.2 (upholding the same comparator).

Read "as a whole," *Hughes I*, 595 U.S. at 177, the AC alleges meaningful comparators. Defendants string-cite out-of-Circuit and/or non-GIC cases; *but see*

*Halamek,* 2026 WL 2620864, at *2 n.1 (upholding the exact same comparators in a general account GIC challenge). Defendants' cases, involving mutual funds or lacking uncompensated-risk theories, are again misplaced. MTD at 11.[5]

### E. The Underperformance Was Persistent and Substantial

Defendants inconsistently argue that SVF rates are "predetermined" and that the AC alleges only information "during the putative class period," while conceding there are "pre-class-period allegations" and that "10-year underperformance" suffices. MTD at 13. The alleged underperformance was persistent and substantial, spanning eleven annual and 44 quarterly review cycles and averaging over 48%. AC ¶¶ 70, 90, 103, 131, 148. *See Jones v. DISH Network Corp*., 2023 WL 7458377, at *7 (D. Colo. Nov. 6, 2023) (using IPS review periods); *but see Klawonn v. Bd. of Directors for the Motion Picture Indus. Pension Plans*, 2026 WL 2364541, at *1 (9th Cir. Aug. 14, 2026) (ERISA does not require underperformance to be "substantial."); *Russell*, 2026 WL 2387006, at *2 (similar).

It is accepted as true that underperformance is "significant" and "warrant[ed] close analysis," *Johnson*, 122 F.4th at 221–22, and that prudent fiduciaries assess "relative" underperformance, rather than absolute returns, to evaluate "value," *Muldoon*, 2026 WL 2594498, at *9, and, relatedly that, a "1% difference" in significant in light of compounding losses. *Troudt*, 2017 WL 663060, at *6 n.2. Yet, even under Defendants' (incorrect) *absolute return* approach, Plaintiff alleges greater underperformance than other GIC

---

[5] *See supra* (distinguishing *Eibensteiner*; *Jacobs*); *Glick v. ThedaCare, Inc*., 2022 WL 16927749, at *6 (E.D. Wis. Oct. 27, 2022) (comparing only one other GIC and challenging fees, not uncompensated risk); *Anderson*, 137 F.4th at 1023 (challenging a with a "risk-mitigation" goal, while the comparators "pursued … revenue generation."); *Locascio v. Fluor Corp*., 2023 WL 320000, at *1 (N.D. Tex. Jan. 18, 2023) (mutual funds); *Matousek v. MidAmerican Energy Co*., 51 F.4th 274 (8th Cir. 2022) (mutual funds).

cases have upheld. *See*, *e.g.*, *Somers*, 2024 WL 4008527, at **3, 4 (0.07% over a "five year period"); *Carter*, 2025 WL 2427614, at *6 (1.36%); *Payne*, 2024 WL 4228613, at **6-7 (0.71% sufficient); *Wood*, 2016 WL 5940946, at *3 (rate reasonableness requires "further factual development."); *Teets*, 106 F. Supp. 3d at 1203 (same); *c.f. Lau,* 2016 WL 5957687, at *4 (defendants using the "three-month Treasury Bills rates" as a benchmark).

While Defendants concede that SVFs are not growth funds, *see* MTD at 3-4, they rely solely on growth fund cases,[6] which are "by nature" too different from SVFs, *Payne*, 2024 WL 4228613, at *6-7, having different "metrics used to assess underperformance." *Fezer v. Lockheed Martin Corp*., 2026 WL 1041276, at *7 (D. Md. Apr. 16, 2026). Defendants cite no caselaw that a "5 [repeating] Comparator Funds" is insufficient. MTD at 14. Courts find fewer investments sufficiently numerous. *See Macias*, 2025 WL 4038011, at *2; *Coppel*, 2024 WL 3086702, at *13; *Miller*, 2020 WL 6479564, at *5.

Finally, Defendants insist the GW-GIC's rates are "similar" to other cases by pointing to an improper extraneous document, *but see Disselkamp*, 2019 WL 3536038, at *8. Again, that chart does not disaggregate SVFs by risk profile or terms. Courts reject similar attempts to invoke an argument about "a broader trend of complaints," *Muldoon*, 2026 WL 2594498, at *11, because it defies "the Supreme Court's conclusion that such categorical approaches are inappropriate." *Rodriguez v. Hy-Vee, Inc*., 2022 WL 16648825, at *10 (S.D. Iowa Oct. 21, 2022) (rejecting the same *ad hominem attacks*). Significantly, Defendants' chart includes challenged products that *survived* dismissal

---

[6] *See Enstrom v. SAS Inst*., 2025 WL 685219, at *5 (E.D.N.C. Mar. 3, 2025); *Abel v. CMFG Life Ins. Co*., 2024 WL 307489, at *5 (W.D. Wis. Jan. 26, 2024); *Cho v. Prudential Ins. Co. of Am*., 2021 WL 4438186, *10 (D.N.J. Sept. 27, 2021); *Bekker v. Neuberger Berman Group LLC*, 2018 WL 4636841, at *2 (S.D.N.Y. Sept. 27, 2018); *Bloom v. AllianceBernstein L.P*., 725 F. Supp. 3d 325, 341 (S.D.N.Y. 2024) (a "one-year period").

attempts, including the same Great West GIC as here. *See* Dkt. 26-4, Line 24 (*Muldoon*); *see also id.*, Line 12 (*Halamek*), Dkt. 26-4 Line 16 (*In re Cigna ERISA Litig*., 2026 WL 1398620, at *3 (E.D. Pa. May 19, 2026)).[7]

### F. The Crediting Rates Are Plausibly Alleged

Contrary to Defendants' misrepresentation, "the Plan disclosures" provide the underlying data, MTD at 15; *see* ¶ 117 n.14; *e.g.* Exhibit A at AOLIC-000002, and courts routinely uphold calculations using year-end Form 5500 data at this stage, with disputes warranting discovery, not dismissal. *See Muldoon*, 2026 WL 2594498, at *11; *Brewer,* 2026 WL 2445492, at *8. Rather than offer contrary calculations, Defendants misrepresent *Clinton*, which rejected the same arguments while distinguishing their recordkeeping-fee case of *Woznicki v. Aurora Health Care Inc.*, 2022 WL 1720093 (E.D. Wis. May 27, 2022). *Clinton* held the "money entering or exiting the funds during the year" arguments were "speculative," and potentially favored plaintiffs because the disparities may be underrepresented. 2025 WL 3470685, at *7, 8; MTD at 15 (same arguments).

## IV. Th Duty to Monitor Claim Survives

Because the underlying prudence claim is plausible, so too is Plaintiff's derivative duty to monitor claim. See *Macias*, 2025 WL 4038011, at *10.

## V. CONCLUSION

Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety, or, alternatively grant Plaintiffs leave to amend. *See Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir. 1994).

Dated: September 28, 2026 Respectfully submitted,

[7] Safer GICs with multiple wrap providers, meaning safer profiles, had *better* rates than the GW-GIC. *See*, *e.g.*, Dkt. 26-4 at lines 1, 2, 10, 15, 18, 28.

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
James A. Maro, Esquire
**CAPOZZI ADLER, P.C.**
312 Old Lancaster Road
Merion Station, PA 19066
Phone: (610) 890-0200
Email: markg@capozziadler.com
jamesm@capozziadler.com

*Counsel for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of September, 2026, I electronically filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system which will send a notification to all counsel of record in this action.

/s/ *Mark K. Gyandoh*
Mark K. Gyandoh